

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00071-CR

_____

SCOTT ALAN KIRSCH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2008-0684

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion on Remand by Justice Carter

OPI NION ON REMAND

Scott Alan Kirsch was convicted of his second DWI offense and was sentenced to serve 365 days in the Harrison County Jail. On appeal, Kirsch challenges the legal and factual sufficiency of the evidence leading to the finding that he was operating his motorcycle. According to Kirsch, the motorcycle was not running and there was no evidence Kirsch did anything "other than unsuccessfully 'kick start'" his motorcycle. He further complains that the trial court erred in defining the term "operate" in the jury charge because it is a common term and because the definition "to exert personal effort to cause the vehicle to function" improperly commented on the weight of the evidence. In this opinion, on remand from *Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012), we conclude that while the evidence is sufficient to support Kirsch's conviction, the trial court's definition of "operate" commented on the weight of the evidence, resulting in egregious harm. Accordingly, we reverse the trial court's judgment and remand for a new trial consistent with this opinion.

## I. Statement of Facts

Julie Richards was driving home and encountered Kirsch at an intersection in the middle of the road. There were no businesses or houses in sight of the intersection. Kirsch was wearing a helmet[1] and was on top of his motorcycle waiting to either make a turn or go straight. Richards testified,

The gentleman was straddling the motorcycle, had his hands on the handle bars and

---

[1]Because he was wearing a helmet, Richards was unable to identify Kirsch.

2

was just sitting there. . . . At some point, he started tilting to the left, and he didn't fall hard. He just leaned over until he fell completely to the ground, one leg under the motorcycle, one over it still straddling it.

Richards "presumed he was going to get up and he did not." After Kirsch refused her assistance, Richards called the Harrison County Sheriff's Department and reported her observations.

Officer Kevin Johnson, who was located less than two miles from the intersection, responded to the call. He observed Kirsch sitting on top of his silver motorcycle "on Country Club Road at the stop sign to Loop 281" trying to kick-start the motorcycle. Kirsch had difficulty following directions, and a video recording depicting Kirsch's extremely slow and slurred speech, struggle in taking his driver's license out of his wallet, and lack of balance was played for the jury. The video also shows Kirsch using keys to unlock a compartment under the motorcycle seat, implying that he had keys to the ignition. After Kirsch admitted to ingesting several Xanax, Johnson concluded he "was not capable of operating that motorcycle." Johnson believed Kirsch was intoxicated due to his medication or alcohol. He generously described Kirsch as "smart-mouthed" and very uncooperative.

Officer Bill Turner conducted further investigation of the loud and "borderline abusive" Kirsch, noting he had "a little bit of difficulty with his coordination," and emanated a "fairly strong smell" of alcohol. After confirming his suspicion that Kirsch was intoxicated by securing an admission that he had been drinking, Turner arrested him for DWI.[2] The arrest for DWI instead of for public intoxication was due to Turner's belief that "there was no other way—reasonable way

---

[2]Kirsch did not cooperate with attempts to administer field sobriety tests.

3

for me to deduct that that motorcycle had gotten to that location." An inventory of Kirsch's backpack recovered an open Miller High Life and several prescription medications, including Xanax and Flexeril. Kirsch had recently filled a thirty-pill Xanax prescription on March 14, 2008, but only had eighteen or nineteen pills left on the day of his arrest on March 21, 2008.

## II. Sufficient Evidence Supports Kirsch's Conviction of DWI

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of DWI beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (4–1–4 decision) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("No longer shall sufficiency of the evidence be measured by the jury charge actually given"); *see*

*also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Under a hypothetically correct jury charge, Kirsch committed the offense of DWI if (1) he (2) operated (3) a motor vehicle (4) in a public place (5) while intoxicated. TEX. PENAL CODE ANN. § 49.04 (West 2003). Kirsch admits that he was intoxicated in a public place, and that a motorcycle is a motor vehicle. His only challenge on appeal questions whether he was "operating" the motorcycle.

While there is no statutory definition of the term "operate," the Texas Court of Criminal Appeals determined that a person "operates" a vehicle when "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (citing *Barton v. State*, 882 S.W.2d 456, 460 (Tex. App.—Dallas 1994, no writ)); *Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.—Fort Worth 2008, no pet.). In *Denton*, the court held "while driving does involve operation, operation does not necessarily involve driving." 911 S.W.2d at 389. Under the *Denton* standard, "'operating' a motor vehicle is interpreted very broadly." *Dornbusch*, 262 S.W.3d at 436. "Because 'operating a motor vehicle' is defined so broadly, any action that is more than mere preparation toward operating the vehicle would necessarily be an 'action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use.'" *Id.*

5

It is true that no witness saw the motorcycle running.[3]  Yet, Kirsch was found in the middle of the road at an intersection sitting on top of his motorcycle, which he was attempting to balance.  He was wearing a helmet and had keys in hand.  Officer Johnson testified that Kirsch attempted to kick-start the motorcycle.  Using the broad definition of "operate," a jury could have determined Kirsch took action in a manner that would enable the motorcycle's use.

Moreover, the jury was not constrained from looking at circumstantial evidence, which alone can be sufficient to establish guilt.  *Hooper*, 214 S.W.3d at 13.  There were no businesses or houses near the intersection, and Kirsch was in a lane of a public highway.  The jury was free to draw reasonable inferences from the totality of these facts that Kirsch had driven the motorcycle to that place, and thus had operated the motorcycle while intoxicated.  *See Barton*, 882 S.W.2d at 458; *Reynolds v. State*, 744 S.W.2d 156, 158–59 (Tex. App.—Amarillo 1987, pet. ref'd) (evidence sufficient where driver found alone, with feet on floorboard of driver's seat of car that was half in ditch and half on road).[4]

Based upon the totality of the circumstances, we find the evidence legally sufficient to demonstrate Kirsch "took action to affect the functioning of his vehicle in a manner that would

---

[3]The fact that all prescriptions were legal and had been prescribed to Kirsch was cited as contrary evidence.  Intoxication was not challenged.   This fact is not relevant to the issue of operation of the motorcycle.

[4]*See Sheldon v. State*, No. 06-08-00005-CR, 2008 WL 2388687 (Tex. App.—Texarkana June 13, 2008, no pet.) (mem. op., not designated for publication); *see also Ledet v. State*, No. 01-08-00367-CR, 2009 WL 2050753, at **3–4 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.) (mem. op., not designated for publication) (evidence sufficient to establish DWI where defendant found in car parked across the freeway; court reasoned it was not logical that someone else drove car, or that defendant parked car there while sober and proceeded to drink himself into intoxication). Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed."  *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

enable the vehicle's use." *Denton*, 911 S.W.2d at 390.

## III.   Jury Charge Error Caused Harm

### A. Definition of "Operate" Was Error

The Texas Penal Code provides that a person commits the offense of driving while intoxicated when the person "is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). The term "operating" is not defined by the Code. *See id.* The trial court defined "operate" as "to exert personal effort to cause the vehicle to function." Kirsch's counsel objected to defining the term "operate" in the jury charge. Counsel stated that there is no definition for the word 'operate' in the Penal Code and the definition was improper. The Texas Court of Criminal Appeals found that the trial court erred in defining the term and remanded for our analysis of harm. *Kirsch*, 357 S.W.3d 645.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Generally we must first determine whether error occurred. *Middleton*, 125 S.W.3d at 453. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32. In this case, the first step in that process has been completed by the Court of Criminal Appeals in finding error.

In *Kirsch*, the Texas Court of Criminal Appeals explained:

7

Here, in defining the term "operate" as "to exert personal effort to cause the vehicle to function," the trial court selected one definition of a statutorily undefined, common term that the jury could have selected in assessing the evidence and instructed the jury that they "must be governed by" that definition. Although the definition set forth in the charge is an appropriate definition for an appellate court to apply in assessing the sufficiency of the evidence to support the "operate" element, instructing the jurors as to that definition in this case impermissibly guided their understanding of the term. The jury should have been free to assign that term "any meaning which is acceptable in common parlance."

Furthermore, as appellant noted in his direct-appeal brief, the definition emphasizes evidence tending to show "personal effort" toward causing the vehicle to function over evidence that would tend to show "merely preparatory attempts to start the motorcycle," which the jury could have reasonably decided did not constitute "operating." Therefore, although the instruction did not "pluck out" any specific piece of evidence for special attention, it did improperly focus the jury on the type of evidence that would support a finding that appellant was operating his motorcycle.

357 S.W.3d at 652 (citations omitted). The Texas Court of Criminal Appeals has held that "the trial court improperly impinged on the jury's fact-finding authority by limiting the jurors' understanding of what evidence could constitute 'operating,'" therefore the trial court erred by defining that term in its charge to the jury. *Id.* We have examined the record in conducting a harm analysis.

## B. Harm Was Shown

The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether Kirsch objected. *Abdnor*, 871 S.W.2d at 732. "Where there has been a timely objection made at trial, an appellate court will search only for 'some harm.' By contrast, where the error is urged for the first time on appeal, a reviewing court will search for

'egregious harm.'" *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)).

Since counsel objected to the trial court's definition of the term "operate," our review will be to determine if some harm is shown. Neither the State nor the defendant has a burden of proof or persuasion in a harm analysis conducted under *Almanza*. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). We will search the record for "some harm" and reversal is required if the error is one calculated to injure the defendant or as long as the error is not harmless. *Abdnor*, 871 S.W.2d at 732 (citing *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)). We determine harm in light of the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record as a whole. *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). The purpose is to illuminate the actual, and not just the theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Here, whether Kirsch was operating the motor vehicle was the central issue in this case, considering that no witness saw Kirsch driving the motorcycle.[5] The charge containing the erroneous instruction was read to the jury. During closing argument, the prosecutor stated:

> He doesn't actually have to be driving his motor vehicle down the road. He could be operating. And the last—right here where it says "operate," you have a good definition of the word. We are talking about "exerting personal effort to cause the vehicle to function."

[5]Kirsch's counsel argues, "The evidence shows only that he was sitting on a motorcycle that was not running in a public place."

Now, if you take a look at all of the evidence that's been presented, including the officer's testimony where he said he saw him kick starting it, that is operating the motorcycle. That can be used.

So if you find beyond a reasonable doubt that he was attempting to kick start, that is operation of a motor vehicle, and you could use that. If you find beyond a reasonable doubt that he was doing that, then you may find him guilty. Everybody see where I'm going with that? If you find that he was kick starting it, then you can find that he was operating, and then you can find that he was operating a motor vehicle. . . .

The word "operation", other definitions are function, run, activate, control, maneuver. Because if we didn't catch him in the act of driving, then you can't convict him of this offense, right? That's not true. Because we do have evidence that he was operating a motor vehicle.

Here, the prosecutor listed definitions of the term operate which the jury would have been allowed to consider absent submission of the erroneous instruction, and directed them that these definitions required more evidence than was present in the case. As stated in *Kirsch*, the jury should have been free to assign "any meaning which is acceptable in common parlance" to the term "operate." 357 S.W.3d at 652. The Texas Court of Criminal Appeals found that by foreclosing acceptable meanings of the term operate in this case, the court "improperly impinged on the jury's fact-finding authority by limiting the jurors' understanding of what evidence could constitute 'operating.'" *Id.* Effectively, the Texas Court of Criminal Appeals has found that the trial court's definition of the term "operate" deprived Kirsch of the right to allow the jury to consider any understanding of the term "operate" in common parlance. Further, the main defensive theory presented and argued in this case was that Kirsch was merely sitting on the motorcycle, not operating it. A finding that the definition given was an improper restriction on the jury's

10

"understanding of what evidence could constitute 'operating'" logically leads to the conclusion that the charge vitally affected Kirsch's main defensive theory and made the case for conviction significantly more persuasive. Therefore, we find the inclusion of this definition for the term "operate" constituted some harm.[6]

This point of error is sustained.

## IV. CONCLUSION

We reverse the trial court's judgment and remand this case for a new trial consistent with this opinion.

Jack Carter
Justice

Date Submitted: May 7, 2012
Date Decided: May 8, 2012

Publish

---

[6]We acknowledge the seemingly odd conclusion that while the evidence of guilt, when tested by an approved definition of the term "operate," is sufficient, a similar definition, when given to the jury, caused harm to the defendant. Based on the rationale of the Texas Court of Criminal Appeals, we find no other conclusion can be drawn. Had the convicting jury not been given a definition of the term, we could conclude the jury elected to use a broad definition of "operate" which led to conviction rather than choosing a more restrictive definition that might have led to an acquittal.